NOT FOR PUBLICATION                                                            (Doc. Nos 9, 10)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| In the matter of the ESTATE OF WILLIAM E. KENSINGER, JR., | Civil No. 09-6510 (RBK/AMD)  **OPINION** |

This is a dispute regarding proceeds from a decedent's ERISA-governed 401(k) retirement plan. The decedent was married to Defendant Adele Kensinger, and he designated her as the 401(k) beneficiary. The couple subsequently divorced, and Defendant executed a Property Settlement Agreement whereby she waived her right to any interest in her husband's retirement accounts. Notwithstanding the Property Settlement Agreement, the decedent did not remove Defendant as the named beneficiary of his 401(k) plan.

This matter comes before the Court pursuant to Defendant's motion for summary judgment (Doc. No. 9) declaring that she is entitled to the 401(k) proceeds as the named beneficiary. Plaintiff, the Estate of William E. Kensinger, Jr. (the "Estate"), opposes Defendant's motion and cross-moves for summary judgment declaring that the Property Settlement Agreement is a valid waiver and the 401(k) proceeds belong to the Estate (Doc. No. 11). For the reasons discussed below, the Court finds that, although valid, the Estate may not sue to enforce the waiver and Defendant is entitled to the 401(k) proceeds.

I.     BACKGROUND

In June 2000, the decedent, Mr. Kensinger, enrolled in his employer-sponsored optional deferred savings plan (the "401(k)"). (Beneficiary Form dated June 28, 2000, Pl. Ex. B).

1

Kensinger's 401(k) plan is an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. When Kensinger enrolled in the plan, he was married to Defendant, and he executed a form naming her as the primary beneficiary (the "Beneficiary Form"). (Id.). Eight years later, in July 2008, Kensinger and Defendant divorced. (Final Judgment of Divorce dated July 10, 2008, Def. Ex. B).

The Final Judgment of Divorce incorporated by reference a Property Settlement Agreement that the parties executed in April 2008. (Id. at 2). The section of the Property Settlement Agreement entitled "Retirement/Pensions" provides: "[T]he parties mutually agree to waive, release, and relinquish any and all right, title, and interest either [party] may have in and to the other's IRA account(s), or any other such retirement benefit and deferred savings plan of like kind and character, and neither shall make any claim to possession of such property as it is presently titled." (Property Settlement Agreement dated Apr. 30, 2008, Pl. Ex. C).

Kensinger died intestate in April 2009, nine months after the parties divorced. (Administrator Short Certificate dated Oct. 23, 2009, Def. Ex. C). As of November 9, 2009, Kensinger's 401(k) plan had a balance of $57,128.00. (Email from Michael R. Stein dated Nov. 12, 2009, Def. Ex. D). Kensinger's employer, URL Pharma ("URL"), has yet to distribute the funds.

In November 2009, the Estate filed an application for an order to show cause along with a Verified Complaint in the Superior Court of New Jersey, Chancery Division, Probate Part. The Estate's application sought, among other things, an order restraining URL from distributing the 401(k) proceeds to Defendant and declaring that the Estate rather than Defendant is entitled to the funds. In December 2009, URL removed the matter to this Court pursuant to 28 U.S.C. § 1331(a)(2) because it implicates ERISA and therefore arises under federal law.

2

In May 2010, Defendant moved this Court for summary judgment declaring that she is entitled to the 401(k) proceeds and ordering URL to transfer the funds to a 401(k) account in her name. The Estate opposed Defendant's motion and cross-moved for summary judgment declaring that it is entitled to the 401(k) proceeds based on Defendant's waiver in the Property Settlement Agreement.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

In this case, the parties do not dispute any of the material facts or contest the authenticity of any of the material documents. The matter turns on the legal relationship between the Property Settlement Agreement's waiver provision and the 401(k)'s Beneficiary Form.

## III.    DISCUSSION

The Estate claims that pursuant to the Property Settlement Agreement, Defendant waived her rights to the 401(k) proceeds and that URL must distribute the proceeds directly to the Estate as the rightful owner.[1] Defendant responds that ERISA benefits may not be altered by common

---

[1] In arguing that Defendant's waiver was ineffectual, the Estate initially relied on the Property Settlement Agreement and N.J.S.A. 3B:3-14, which provides that "a divorce or annulment . . . revokes any revocable . . . dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument." However, the Estate now concedes that ERSIA preempts N.J.S.A. 3B:3-14. (Pl. Br. at 6) ("Plaintiff concedes that ERISA pre-empts N.J.S.A. 3B:3-14"). Thus, the only issue on this motion is whether the Property Settlement Agreement amounts to an effective waiver of Defendant's beneficiary interest.

law waiver. Thus, according to Defendant, the Property Settlement Agreement cannot invalidate the decedent's 401(k) Beneficiary Form and URL must transfer the funds to a retirement account in Defendant's name.

### A. Whether URL Must Transfer The 401(k) Proceeds To Defendant

The Supreme Court's recent holding in Kennedy v. DuPont, 129 S. Ct. 865 (2009), governs this dispute. In Kennedy, the decedent was a participant in an employee-sponsored savings and investment plan ("SIP") governed by ERISA. Id. at 868. The decedent executed a form designating his wife as the primary beneficiary under the SIP. Id. at 869. The parties divorced subject to a decree that the decedent's wife was "divested of all right, title, interest, and claim in and to . . . [a]ny and all sums . . . the proceeds [from], and any other rights related to any . . . retirement plan, pension plan, or like benefit program existing by reason of [the decedent's] past or present or future employment." Id. After the divorce, the decedent did not change the SIP beneficiary designation. Id. When he died, the plan administrator distributed the SIP funds to the decedent's ex-wife pursuant to the beneficiary form but in contravention of the divorce decree. Id.

The Estate sued the plan administrator "claiming that the divorce decree amounted to a waiver of the SIP benefits . . . and that [the plan administrator] had violated ERISA by paying the benefits." Id. at 869. The plan administrator argued that ERISA preempted all state law divorce decrees except Qualified Domestic Relations Orders ("QDRO"), which ERISA expressly recognizes, see 29 U.S.C. §1056(d)(3), and it was obligated to distribute the SIP funds pursuant to the plan documents. Id. at 869-70.

The Supreme Court held that ERISA does not preempt all non-QDRO divorce decrees. Id. at 873-74. Specifically, the Court held that although ERISA's antialienation provision, 29

4

U.S.C. §1056(d)(1), prohibits ERISA plans from allowing benefits to be "assigned" or "alienated," a common law waiver of ERISA benefits does not constitute an assignment or alienation because it does not involve an "attempt to direct [an] interest in [ERISA] benefits to . . . any other potential beneficiary." Id. at 873. The Court also rejected the argument that because ERISA expressly permits employees to alter their beneficiaries by way of a QDRO, all other common law waivers are preempted. Id. at 874.

However, the Court held that although the divorce decree in Kennedy was valid, it was nevertheless ineffectual as an ERISA waiver because the plan administrator was bound to distribute benefits pursuant to the plan documents. Id. at 874-75 ("The plan administrator is obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]'") (quoting 29 U.S.C. §1104(a)(1)(D)). In so holding, the Supreme Court effectively resolved a circuit split. Id. at 870. Before Kennedy, the majority of circuits held that a beneficiary could waive ERISA plan benefits by executing a property settlement agreement or any other instrument that constituted a valid waiver under federal common law. See id. (noting circuit split and listing examples). The minority of circuits, including the Third Circuit, adopted the so called "plan document" rule, which held that plan participants could change their ERISA beneficiaries only by executing the appropriate plan documents and that common law waivers were not effective. Id. (listing the Third Circuit's holding in McGowan v. NJR Serv. Corp., 423 F.3d 241 (3d Cir. 2005), as illustrative of the minority view). By holding that ERISA does not categorically preempt common law waivers but that plan administrators are nevertheless bound by the plan documents in the face of conflicting common law waivers, the Supreme Court effectively adopted the "plan document" rule regarding plan administrators. See Zangara v. Int'l Painters & Allied Trades

Indus. Pension Fund, No. 07-163S, 2010 U.S. Dist. LEXIS 31244, at *17 (W.D.N.Y. Mar. 31, 2010) ("because the Supreme Court has rejected what was the majority view, . . . the beneficiary of a pension plan participant may not waive his or her rights to the participant's ERISA benefits through a divorce judgment.").

In support of adopting that rule, the Court relied on one of the oft cited policy concerns underlying ERISA: that employee benefit plans be "uniform in their interpretation and simple in their application." McMillan v. Parrott, 913 F.2d 310, 312 (6th Cir. 1990) (citing H. Rep. No. 533, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 4639, 4650). According to the Court, ERISA was intended to ensure "a straightforward rule of hewing to the directives of the plan documents that lets employers 'establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursements.'" Kennedy, 129 S. Ct. at 875 (quoting Egelhoff v. Egelhoff, 532 U.S. 141, 148 (2001)). "The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule." Id. at 875-76 (noting that a contrary rule would conflict with the manageability concerns underlying ERISA because "[p]lan administrators would be forced to examine a multitude of external documents that might purport to affect the dispensation of benefits, and be drawn into litigation like this over the meaning and enforceability of purported waivers.") (internal citation and quotation marks omitted). Thus, the Court concluded that the plan administrator in Kennedy properly followed only the plan documents notwithstanding the valid waiver in the divorce decree. Id. at 878 ("Although [the beneficiary's] waiver was not rendered a nullity . . . , the plan administrator properly distributed the . . . benefits . . . in accordance with the plan documents.").

In this case, even if the Property Settlement Agreement constitutes a valid waiver of Defendant's right to the 401(k) proceeds, Kennedy makes clear that URL must transfer the proceeds by reference only to the plan documents. Because the parties do not dispute that Defendant is the beneficiary listed on the plan documents, URL must transfer the funds to Defendant.

### B. Whether The Estate Has A Claim Against Defendant Because She Waived Her Beneficiary Rights Under Federal Common Law

The above analysis does not end the inquiry. In an important footnote in Kennedy, the Court stated that it did "not express any view so to whether the Estate could have brought an action in state or federal court against [the decedent's ex-wife] to obtain the benefits after they were distributed." Id. at 875 n.10 (citing Sweebe v. Sweebe, 474 Mich. 151, 156-59, 712 N.W.2d 708, 712-713 (2006) (holding that "while a plan administrator must pay benefits to the named beneficiary as required by ERISA," after the benefits are distributed "the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds"); Pardee v. Pardee, 112 P. 3d 308, 313-14, 315-16 (2004) (holding that ERISA did not preempt enforcement of allocation of ERISA benefits in state-court divorce decree as "the pension plan funds were no longer entitled to ERISA protection once the plan funds were distributed")). Because ERISA does not categorically preempt all non-QDRO divorce-decree waivers, see id. at 874, the Court's declination leaves open the possibility that a decedent's estate may sue the named beneficiary to enforce a valid waiver of ERISA benefits.

Thus, this Court must address whether the Estate may pursue its claim against Defendant once Defendant receives the proceeds from URL.[2]  As discussed below, the Court holds that the

---

[2] Although the proceeds have not yet been distributed to Defendant, this issue is ripe for the Court's review because, as held in the first portion of this opinion, URL is obligated by law to transfer the 401(k) proceeds to Defendant. Thus, for present purposes, Defendant has the right to the proceeds and the Estate has standing to challenge that

7

Estate may not assert a claim against Defendant regarding the 401(k) proceeds because such a collateral attack on ERISA benefits would undermine one of the statute's principal objectives: proving certainty regarding the final distribution of benefits to named beneficiaries.  See Boggs v. Boggs, 520 U.S. 833, 851 (1997) (holding that ERISA preempted state community property law because the law presented an obstacle to ERISA's purposes).

First, Kennedy should not be interpreted as holding that ERISA is concerned only with tidy and cost-effective plan administration.  See Kennedy, 129 S. Ct. at 877 (recognizing that in enacting ERISA, Congress sough to "minimize[e] the administrative and financial burden[] of plan administrators").  ERISA is also concerned with ensuring that named beneficiaries actually receive the benefits of ERISA-governed plans.  See Boggs, 520 U.S. at 845 ("The principal object of the statute is to protect plan participants and beneficiaries.") (emphasis added) (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983) ("ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans") (emphasis added)); 29 U.S.C. §1001(b) ("It is hereby declared to be the policy of this Act to protect . . . the interests of participants in employee benefit plans and their beneficiaries") (emphasis added).   One of the ways that ERISA achieves this goal is by requiring plan

---

right by seeking to enforce Defendant's putative waiver.  Moreover, this Court does not believe that this matter should be remanded to state court for a determination under state law regarding the effect of Defendant's purported waiver in the Property Settlement Agreement.  See contra Hall v. Hall, No. 09-3522, 2009 U.S. Dist. LEXIS 79027, at * 8-9 (E. D. Pa. Sept. 3, 2009) (remanding action between estate and beneficiary because once ERISA benefits were distributed by the plan administrator the matter concerned essentially state law).  In Kennedy, the Supreme Court held that the waiver of an ERISA beneficiary-interest through a non-QDRO divorce decree is governed by federal common law.  Specifically, the Court held:
> [R]ecognizing a waiver in a divorce decree would not be giving effect to state law; the argument is that the waiver should be treated as a creature of federal common law, in which case its setting in a state divorce decree would be only happenstance.  A court would merely be applying federal law to a document that might also have independent significance under state law.

Id. at 874 (citations omitted).  Thus, resolution of this matter is properly before this Court because it involves an issue of federal common law under ERISA.

administrators to distribute plan proceeds by reference only to the beneficiaries named in the plan documents.  See Kennedy, 192 S. Ct. at 875-76.

To be sure, plan participants and beneficiaries can change or disclaim their interests under ERISA plans.  See McMillan, 913 F.2d at 312 ("A participant is master of his own ERISA plan."); Staelens v. Staelens, 677 F. Supp. 2d 499, 508 (D. Ma. 2010) ("After all, an ERISA participant has full control over the distribution of his or her benefits").  But they must do so by amending the plan documents pursuant to the plan rules.  See Kennedy, 129 S. Ct. at 877 ("The plan provided an easy way for [the participant] to change the designation, but for whatever reason he did not.  The plan provided a way to disclaim an interest in the [plan], but [the beneficiary] did not purport to follow it"); id. at 876 (holding QDROs are "in effect" plan documents because ERISA specifically recognizes them and therefore plan administrators properly consider them in distributing proceeds); McMillan, 913 F.2d at 312 (holding that plan participant's "designation" on plan documents controls notwithstanding a contrary intent). ERISA's strict and specific rules ensure not only that plan administrators have clear direction regarding plan administration, but also that plan participants and beneficiaries know exactly who is entitled to receive plan proceeds.  See Kennedy 129 S. Ct. at 876.  Indeed, the "[r]ules requiring payment to named beneficiaries yield simple administration, avoid double liability, and ensure that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules."  Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting) (emphasis added) (quoted with approval in Kennedy, 192 S. Ct. at 876).

Consequently, this Court concludes that the Estate may not pursue its claim against Defendant regarding the 401(k) proceeds because such a claim would directly undermine one of

9

ERISA's core objectives: providing certainty regarding the final distribution of ERISA benefits. Allowing these sorts of collateral attacks would simply redirect uncertainty from plan administrators, where it loomed before Kennedy, to beneficiaries. See Staelens, 677 F. Supp. 2d at 507 ("the Supreme Court [in Kennedy] may have closed one door to litigation against plan administrators but it may well have opened another to litigation between family or former family members."). The certainty created by Kennedy for plan administrators is of no value to beneficiaries, whom ERISA is also designed to protect, if they are subject to collateral attacks regarding their right to retain ERISA benefits. See id. at 508 (concluding that collateral attacks "would appear to go against the various interests which the Supreme Court deemed served by a uniform administrative scheme" and "it is difficult to believe that these interests would simply fall by the wayside once funds had been distributed").

Second, the Supreme Court's pre-Kennedy holding in Boggs supports this conclusion. Boggs involved whether ERSIA preempted portions of Louisiana's community property law. Boggs, 520 U.S. at 835-36. The decedent in Boggs, Isaac Boggs, was married to Dorothy Boggs. Id. at 836. Dorothy and Isaac had three sons before Dorothy died. Id. Dorothy's will left a portion of her interest in Isaac's ERISA pension benefits to her sons. Id. Isaac remarried, and, upon his death, left his property entirely to his second wife, including his ERISA retirement benefits. Id. at 836-37. One of those benefits was a lump sum payment that the plan administrator had already paid to Isaac upon his retirement. Id. After Isaac died, his sons claimed an interest in the ERISA retirement fund through their mother's will. Id. at 837. Isaac's second wife contested their claim by arguing that ERISA preempted Dorothy's testamentary transfer of her interest in the retirement fund to her sons. Id. at 837.

The Supreme Court held that ERISA preempted the transfer and that Isaac's second wife had exclusive claim to the benefits. Id. at 835-36. In reaching that conclusion, the Court held that preemption of state law was necessary to preserve ERISA's goals because, "if state law is not pre-empted, the diversion of retirement benefits will occur regardless of whether the interest in the pension plan is enforced against the plan or the recipient of the pension benefit." Id. at 853; see id. at 852 ("it would be inimical to ERISA's purposes to permit testamentary recipients to acquire a competing interest in undistributed pension benefits, which are intended to provide a stream of income to participants and their beneficiaries") (emphasis added). In other words, the Court found there is no meaningful difference between an action against a plan administrator to enforce a waiver and an action against a beneficiary. Both types of litigation frustrate ERISA's stated objective of ensuring certainty regarding the final distribution of benefits. Id. at 853 ("Viewed realistically, the State has rendered the award of title meaningless") (quoting Free v. Bland, 369 U.S. 663, 669 (1962), and concluding that "[t]he same reasoning applies here").

Although Boggs involved a conflict between ERISA and a testamentary transfer under Louisiana's community property law, the Court's reasoning applies with equal force to the conflict between ERISA and litigation to enforce common law waivers of ERISA benefits. Collateral attacks on ERISA benefits based on common law waivers may not create uncertainty or additional cost for plan administrators. But, as noted above, ERISA is also concerned with the rights of named beneficiaries. Allowing the Estate to purse a claim directly against Defendant would render Defendant's beneficiary status under ERSIA meaningless and create general uncertainty regarding the final distribution of ERISA benefits. Such a result is inconsistent with the Supreme Court's holding in Boggs.[3]

---

[3] Some pre-Kennedy cases distinguished Boggs and reached the opposite conclusion. See, e.g., Sweebe, 712 N.W.2d at 712-13 (distinguishing Boggs and holding that although "a plan administrator must pay benefits to the

11

Third, foreclosing collateral attacks is not inconsistent with the Supreme Court's holding in <u>Kennedy</u>. The Estate's strongest argument is that foreclosing collateral attacks is inconsistent with <u>Kennedy</u>'s holding that ERISA does not categorically preempt all common law ERISA waivers. See <u>Kennedy</u>, 129 S. Ct. at 874-75. As the argument goes, it does not make sense that the Supreme Court would uphold that validity of common law waivers, but nevertheless hold that ERISA bars a claim to enforce common law waivers. Although this argument has merit, the Court finds it unpersuasive. The Supreme Court's holding in <u>Kennedy</u> is itself subject to this criticism. In <u>Kennedy</u>, the Court held that common law waivers of ERISA benefits may be valid, but it simultaneously held that the plaintiff could not sue the plan administrator to enforce that waiver. According to the Court, then, the fact that a waiver is valid does not require that a court recognize a plaintiff's action to enforce the waiver. Indeed, the Court's ruling rendered the common law waiver in <u>Kennedy</u> effectively useless.[4] In this case, the fact that the Property Settlement Agreement may constitute a valid wavier under <u>Kennedy</u> does not require the conclusion that the Estate may assert a claim against Defendant to enforce such a waiver.

---

named beneficiary as required by ERISA," after the benefits are distributed "the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds"); <u>Pardee</u>, 112 P. 3d at 313-14 (distinguishing <u>Boggs</u> and holding that ERISA did not preempt enforcement of allocation of ERISA benefits in state-court divorce decree as "the pension plan funds were no longer entitled to ERISA protection once the plan funds were distributed"). However, this Court finds the reasoning of those cases unpersuasive particularly because the Court in <u>Kennedy</u> relied on Judge Easterbrook's dissent in <u>Fox Valley</u>, which expressly rejected the reasoning in those cases. See <u>Kennedy</u>, 129 S. Ct. at 876 (quoting <u>Fox Valley</u>, 897 F.2d at 283 (Easterbrook, J., dissenting)).

[4] As Judge Easterbrook noted in his dissent in <u>Fox Valley</u>, is it not all together uncommon for a federal statute to trump private choice:
> ERISA does not stand alone in thwarting private choice. Federal insurance and annuity laws often provide that benefits must be paid to the person whose name is on file. These not only undo actual bargains, denying beneficiaries the autonomy to choose what to do with their wealth, but also produce some weird results. Still, we enforce them. E.g., <u>Prudential Ins. Co. v. Parker</u>, 840 F.2d 6 (7th Cir. 1988).

<u>Fox Valley</u>, 897 F.2d at 283 (Easterbrook, J., dissenting).

Finally, the courts that have squarely addressed the issue after Kennedy have found that collateral attacks on ERSIA benefits undermine ERISA's principal objectives.[5] See Staelens, 677 F. Supp. at 5089 (finding that ERISA's objectives would be compromised if decedent's estate could bring a claim against named beneficiaries to enforce common law waivers of ERISA benefits); Eddings v. Eddings, No. 09-5549, 2010 U.S. Dist. LEXIS 38490, at *9 n.4 (N.D. Cal. Apr. 19, 2010) (same); cf. Zangara, 2010 U.S. Dist. LEXIS 31244, at *17 (holding that after Kennedy "a beneficiary's waiver is effective only if it complies with the provisions of the pension plan document"). But see Hall, 2009 U.S. Dist. LEXIS 79027, at *9 (failing to address the issue but concluding without discussion that an estate may bring a claim against a named beneficiary based on a state law that required the beneficiary to forfeit a portion of the beneficiary's ERISA proceeds).

Thus, this Court concludes that the Estate may not assert a claim directly against Defendant to enforce the putative waiver in the Property Settlement Agreement. Such a claim would directly undermine ERSIA's stated objectives and run contrary to the Supreme Court's precedent interpreting ERISA. It should be noted that Kensinger was not without a means of ensuring that his ex-wife did not receive his 401(k) proceeds if that was what he intended. He

---

[5] The Third Circuit has not addressed the issue, and its pre-Kennedy precedent provides little guidance. In McGowan, a pre-Kennedy case, the Third Circuit considered "whether the administrators of a retirement plan that is covered by [ERISA] are required to recognize an individual's waiver of her beneficiary interest under the plan." McGowan, 423 F.3d at 243. Judge Van Antwerpen concluded that ERISA preempted common law waiver of plan benefits because: (1) ERISA's plain language required plan administrators to comply with the plan documents, id. at 245-46; (2) a contrary ruling would undermine ERISA's principal goal of ensuring that employment benefit plans are "uniform in their interpretation and simple in their application," id. at 246; and (3) common law waivers violate ERISA's antialienation provision, id. at 248. However, both Judges Becker and Fuentes disagreed with Judge Van Antwerpen's conclusion that requiring plan administrators to honor common law waivers would undermine ERISA's efficiency objectives. Judge Becker concurred only with Judge Van Antwerpen's conclusion that the waiver at issue in the case was preempted by ERISA's antialienation provision. Id. at 250-51 (Becker, J., concurring). Judge Fuentes dissented. Id. at 255 (Fuentes, J., dissenting). Thus, the majority of the panel agreed on only one issue: that ERISA's antialienation provision preempted common law waiver of beneficiary interests. However, Kennedy expressly overruled that holding. Kennedy, 129 S. Ct. at 870-75 (holding that ERISA's antialienation provision does not preempt all common law waivers). Thus, there is no clear guidance from the Third Circuit as to whether collateral attacks on ERISA benefits are preempted because they present an obstacle to the statutes' objectives.

could have unilaterally amended the Beneficiary Form or obtained a QDRO.  He did not do either of those things, and the policies underlying ERISA dictate that the plan documents be strictly enforced to avoid costly inquiries into the decedent's intent.  See Kennedy, 129 S. Ct. at 875.

### IV.	CONCLUSION

For the reasons discussed above, this Court concludes that URL must transfer the decedent's 401(k) proceeds to Defendant and that the Estate may not bring a claim against Defendant regarding the 401(k) proceeds.


Dated: 11/01/10                                                                    /s/ Robert B. Kugler
                                                                                           ROBERT B. KUGLER
                                                                                           United States District Judge